**Dr. WARHEIT D.D.S., Plaintiff–Appellant,**

v.

**CITY OF NEW YORK, New York City Health and Hospital Corp., Bellevue Hospital Center, and New York City Fire Department/Department of Emergency Services, Defendants–Appellees.**

No. 06–4463–pr.

United States Court of Appeals, Second Circuit.

April 3, 2008.

Ronald Cohen, Wilmington, North Carolina, for Plaintiff–Appellant.

Sharyn Michele Rootenberg, Assistant Corporation Counsel (Michael A. Cardozo, Corporation Counsel of the City of New York, Larry A. Sonnenshein, Assistant Corporation Counsel, M. Vivian Najib, Assistant Corporation Counsel, on the brief), New York, New York, for Defendants–Appellees.

PRESENT: Hon. CHESTER J. STRAUB, Hon. ROBERT D. SACK, Circuit Judges, Hon. MARK R. KRAVITZ, District Judge.*

* The Honorable Mark R. Kravitz, United States District Judge for the District of Connecticut, sitting by designation.

**124**

### SUMMARY ORDER

Plaintiff–Appellant Ira Warheit appeals from a grant of summary judgment dismissing all of his claims by the United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*) in favor of Defendants–Appellees City of New York ("City"), New York City Health and Hospital Corp., Bellevue Hospital Center, and New York City Fire Department/ Department of Emergency Services (collectively, "Appellees"). On appeal, Warheit argues that the District Court erred in granting summary judgment because genuine issues of material fact exist pertaining to his treatment at a temporary trauma center to treat victims of the September 11th terrorist attacks. Specifically, Warheit raises three issues: (1) whether there is a genuine issue of material fact as to the existence of probable cause to arrest him on September 13, 2001; (2) whether there is a genuine issue of material fact as to whether Dr. Antonio Abad ordered Lt. David Siev of the New York City Police Department to arrest him; and (3) if the second question is answered affirmatively, whether there is also a genuine issue of material fact as to whether Abad acted under the color of law.[1] Only Warheit's false arrest and false imprisonment claims—both asserted as actionable Fourth Amendment violations under 42 U.S.C. § 1983—are relevant to the issues raised in this appeal. We assume the parties' familiarity with the underlying facts and procedural history in this case.

We review *de novo* a district court's grant of summary judgment. *See Guilbert*

*v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007). A district court properly grants summary judgment where "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A 'genuine issue' exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Guilbert*, 480 F.3d at 145. However, the nonmoving party cannot defeat summary judgment by "a factual argument based on conjecture or surmise." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.2006) (internal quotation marks omitted).

Warheit first argues that the evidence in the record creates a genuine issue of material fact with respect to whether Siev had probable cause to arrest him.[2] Specifically, Warheit contends that the District Court erred in finding that Siev had probable cause to take him into custody because Warheit was permitted to enter the trauma center. Warheit further argues that Siev's probable cause rationale rested on Abad's account of Warheit's conduct, which is now contested because Abad later testified that he has no recollection of the incident and witness Frank Fasano contradicted Siev's account.

A § 1983 claim based on an alleged false arrest will not lie if the arrest was supported by probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir.2007). "[P]robable cause to arrest exists when the officers have knowledge or reasonably

---

1. On appeal, Warheit raises no issues regarding his claims of constitutional violations arising out of events that followed his ejection from the Stuyvesant High School trauma center. As such, we do not address any of these claims.

2. The District Court stated that Warheit was never arrested in the traditional sense of be-

ing taken to a police station and charged with a crime. *See Warheit v. City of New York*, No. 02 Civ. 7345(PAC), 2006 WL 2381871, at *5 n. 1 (S.D.N.Y. Aug. 15, 2006). However, the Appellees conceded before the District Court that Warheit was "in custody" when Siev escorted him from the trauma center, and the District Court assumed as such for the purpose of Warheit's false arrest claim. *See id.*

trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (alteration in original, internal quotation marks and citation omitted). In deciding whether probable cause exists, we "must look to the 'totality of the circumstances.'" *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002) (quoting *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The Supreme Court has noted that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. 2317. Moreover, probable cause turns on an objective analysis of information available to the arresting officer. *See Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). We have not yet addressed the question of whether the § 1983 plaintiff has the burden of proving the absence of probable cause or whether the defendant has the burden of proving its existence. *See Davis v. Rodriguez,* 364 F.3d 424, 434 n. 8 (2d Cir.2004). We need not address that question at this time because Warheit's claim fails regardless of which party has the burden of proof.

It is undisputed that Warheit received permission to enter the trauma center area, albeit for the limited purpose of seeking an identification card that would permit him to remain there. It is also undisputed that Warheit had a conversation with Abad about the matter, and Warheit testified that Abad asked him several questions about his "history." At some point, Abad left Warheit in order to seek the assistance of Siev. Specifically, Siev testified that a doctor at the trauma center asked him to help with an individual—whom he later learned to be Warheit—who falsely claimed to be a doctor and who was causing a disturbance. According to his deposition testimony, Siev testified that he observed Warheit "rambling" incoherently and that he was in a "very excited" state. Siev testified that he personally asked Warheit to leave several times. When Warheit refused to do so, Siev decided to remove Warheit and escort him out of the trauma center.

In opposing summary judgment, Warheit did not come forward with admissible evidence which, taken as true, would support the conclusion that Siev lacked probable cause to place Warheit under arrest. Viewed in the light most favorable to him, Warheit's deposition testimony disputes Siev's account that Warheit was rambling incoherently and was asked to leave. But Warheit was not present when Siev was told that Warheit was causing a disturbance and falsely claiming to be a doctor. His deposition testimony therefore does nothing to contradict or undermine the relevant, undisputed facts then known to Siev—that Warheit was not authorized to be in the trauma center and had been identified by authorized personnel as causing a disturbance. In light of the totality of the circumstances—Siev's assignment two days after the terrorist attacks of September 11, 2001 was to go to the Stuyvesant High School trauma center and secure the premises—no reasonable jury could conclude that Siev lacked probable cause to arrest Warheit for trespassing. The District Court therefore correctly granted summary judgment to Appellees on Warheit's false arrest claim.

Warheit also argues that the District Court improperly granted summary judgment to Appellees on his false imprisonment claim because genuine issues of material fact existed with respect to whether Abad "ordered" Siev to arrest Warheit.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir.2006) (internal citation and quotation marks omitted). However, a supervisory official may be held liable for a subordinate's conduct in several ways, such as failing to "remedy the wrong" upon learning of the violation, creating or maintaining a policy or custom that resulted in unconstitutional practices, or acting with "gross negligence" or "deliberate indifference" in relation to the subordinate's constitutional violations. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994).

■ We agree with the District Court's conclusion that no reasonable jury could find, based upon the available evidence, that Abad was personally involved in Warheit's transfer and commitment to Bellevue. *See Warheit*, 2006 WL 2381871, at *8–*9. During his deposition, Warheit conceded that he did not recall Abad and Siev speaking to each other in front of him, and his testimony contains no recollection of the content of any such conversation. Warheit relies on the sworn affidavit of witness Frank Fasano that he had personally seen Abad "order a police officer to arrest Dr. Warheit." However, during his deposition, Fasano corrected that statement by testifying that he had only "learned" from someone else that Abad had ordered an officer to arrest Dr. Warheit. Given the vagueness and secondhand nature of this evidence and the absence of any corroboration, no reasonable jury could conclude that Abad had exer-

cised his authority—assuming that he had such authority, a proposition for which there is no evidence in support—to order a New York City police officer to take any individual into custody.

On appeal, Warheit argues that Abad must have had the authority to order Siev to take him into custody based upon the unsubstantiated assertion that "usual and standard" police response—apparently, in the absence of commands given by a doctor—would have been to take Warheit to a police precinct and charge him with disorderly conduct or trespass. According to this theory, the mere fact that Siev instead took Warheit to a mental health facility via ambulance means that Siev was likely obeying Abad's directives. Given the absence of any evidence in support of this theory, Warheit's argument is nothing more than speculation and conjecture, and such an argument is insufficient to defeat a motion for summary judgment. *See McClellan*, 439 F.3d at 144. The District Court properly granted summary judgment to Appellees on this claim.[3]

In sum, we have considered all arguments presented by Warheit in this appeal and find them to be without merit. For the foregoing reasons, we AFFIRM the judgment of the District Court.

---

**3.** Warheit also argues that there is a genuine issue of material fact as to whether Abad acted under the color of law when he allegedly ordered Warheit's arrest. As with the personal involvement requirement, a § 1983 plaintiff must establish that an individual defendant was acting under state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). As we conclude that the District Court did not err in granting summary judgment on Warheit's false imprisonment claim based upon the personal involvement requirement, we do not reach the question of whether there is a genuine issue of material fact regarding whether Abad acted under the color of law.